941 A.2d 510

**Horace M. ALLEN**

v.

**Carolyn Elaine ALLEN.**

**No. 2066, Sept. Term, 2006.**

Court of Special Appeals of Maryland.

Feb. 6, 2008.

**146**

Laura V. Bearsch, Bel Air, for appellant.

Wendy Widmann, Baltimore, for appellee.

Panel KRAUSER, C.J., and DAVIS and WOODWARD, JJ.

DAVIS, J.

Appellant, Horace M. Allen and appellee, Carolyn Elaine Allen, after reaching an agreement, were granted a judgment of absolute divorce on May 26, 1995 that provided for appellee to be named as the alternative payee of the pension/retirement plans of appellant. The amount was to be determined by the formula as set forth in *Bangs v. Bangs*, 59 Md.App. 350, 475 A.2d 1214 (1984), *via* a separate order.

Appellee filed a Motion for Entry of Constituted Pension Order and Qualifying Court Order on February 2, 2006, to which appellant did not respond. On February 28, 2006, the motion was granted and the Circuit Court for Harford County entered a Constituted Pension Order relative to appellant's military retirement and a Qualified Court Order relative to a civil service retirement. Appellant thereafter filed a *pro se* Motion to Reconsider that appellee answered on April 13, 2006.

The Circuit Court for Harford County conducted a hearing, *sub curia*, on September 22, 2006 and, on October 3, 2006,

appellee filed a Motion for Determination of Arrearages and for Judgment Against [appellant], which appellant subsequently answered. The court entered an order granting appellee's Motion for Determination of Arrearages and Judgment against appellant in the amount of $75,810.97, plus interest at the post-judgment rate and ordered appellant to pay counsel fees in the amount of $1,500.

Appellant noted an appeal on November 20, 2006 and, on December 26, 2006, filed a Motion for Stay of Enforcement of Judgment Pursuant to Maryland Rule 8–422 and Request for Hearing, to which appellee responded on January 4, 2007. The court granted the Motion for Stay on February 1, 2007, on the condition that appellant file an appeal bond in the total judgment amount plus counsel fees within ten days of the date of the Order. The November 1, 2006 Order granting appellee's Motion for Determination of Arrearages and Judgment and the resulting judgment against appellant give rise to the instant appeal, in which appellant presents the following issue for our review.

Whether the circuit court erred in granting appellee's Motion for Determination of Arrearages and for Judgment [against] appellant.

## FACTUAL BACKGROUND

Appellant served in the United States Army from October 1973 until December 2005 and, at the time of the 1995 divorce, appellant was enlisted in the Army Reserve. Appellant was placed on disability due to an anxiety disorder in 2003, resulting in a temporary disability status effective October 30, 2003. At commencement of his disability status, appellant's disability rating was thirty percent, which was subsequently reduced to ten percent and appellant appealed that determination, but his appeal was denied. On December 28, 2005, appellant was discharged from the military because of a permanent physical disability and appellant did not inform appellee of his status. Appellant received $76,410 during his period of temporary disability and, upon his Honorable Discharge, a lump sum payment of $140,192.77 in disability severance.

On October 20, 2005, appellee's counsel initiated correspondence with appellant and requested an updated "Chronological Statement of Points" for the purpose of drafting a constituted pension order, but appellant did not provide the requested information. The Defense Financing and Accounting Service (DFAS) sent appellee correspondence that indicated that no amount of funds received by appellant were available for payment under the Uniformed Services Former Spouses' Protection Act (USFSPA or the Act)[1] because the entire amount was based upon appellant's disability. Appellee thereafter filed her Motion for Determination of Arrearages and for Judgment against appellant that the court granted on November 1, 2006. Additional facts will be provided, hereafter, as warranted.

## LEGAL ANALYSIS

We review the legal rulings of a trial court *de novo*. *Sweeney v. Savings First Mortgage, LLC,* 388 Md. 319, 326, 879 A.2d 1037 (2005). As to factual findings, the Court of Appeals has recently opined that,

> [w]hen there is a conflict in the evidence, an appellate court will give great deference to a hearing judge's first-level factual and credibility determinations. *See, e.g., [State v.] Nieves,* 383 Md. [573] at 581–582, 861 A.2d at 67 [ (2004) ], *Laney [v. State],* 379 Md. [522] at 533–534, 842 A.2d at 779–780 [ (2004) ]. Findings of fact and credibility determinations are to be made by trial courts, not appellate courts. *See State v. Green,* 375 Md. 595, 607, 826 A.2d 486, 493 (2003).

*Longshore v. State,* 399 Md. 486, 520, 924 A.2d 1129 (2007).

Appellant grounds his appeal in the contention that the USFSPA precludes a state court, within the context of a

---

1. 10 U.S.C. § 1408 was enacted in direct response to *McCarty v. McCarty,* 453 U.S. 210, 101 S.Ct. 2728, 69 L.Ed.2d 589 (1981). *See Mansell v. Mansell,* 490 U.S. 581, 584, 109 S.Ct. 2023, 2026, 104 L.Ed.2d 675 (1989) (stating that the language of the Act covers equitable distribution States).

divorce proceeding, from dividing disability pay pursuant to state property laws because the USFSPA authorizes that only disposable retired or retainer pay [2] be counted as marital property for equitable distribution. Appellant characterizes the funds he received from the military as disability payments that commenced solely because of his disability and not because he had retired and, thus, the circuit court did not have the authority to divide disability benefits and award appellee a portion thereof *via* judgment. In so arguing, appellant contends that *Mansell v. Mansell*, 490 U.S. 581, 109 S.Ct. 2023, 104 L.Ed.2d 675 (1989) is dispositive of the instant case.

In *Mansell*, a retired Air Force officer and his wife divorced and, pursuant to an agreement, Mr. Mansell was to pay his wife fifty percent of his total military retirement pay, including a portion he had waived in order to receive veterans' disability benefits. *Mansell*, 490 U.S. at 585–86, 109 S.Ct. at 2027. He thereafter requested that the Superior Court remove that provision requiring him to share his total retirement pay and the Superior Court denied his request. *Id.* at 586, 109 S.Ct. at 2027. Appellant cites 10 U.S.C. § 1408(a)(4)(C) and (E) [3] for the proposition that among

---

**2.** 10 U.S.C. § 1408(a)(4) and (7) defines disposable retired or retainer pay as " 'the total monthly retired or retainer pay to which a military member is entitled,' minus certain deductions." *See Mansell*, 490 U.S. at 584 n. 2, 109 S.Ct. at 2026 n. 2.

**3.** 10 U.S.C. § 1408(a)(4) does not contain a subsection "(E)." We presume appellant refers to "(B)" and we recreate the entire subsection for clarity as follows:

(4) The term "disposable retired pay" means the total monthly retired pay to which a member is entitled less amounts which-

(A) are owed by that member to the United States for previous overpayments of retired pay and for recoupments required by law resulting from entitlement to retired pay;

(B) are deducted from the retired pay of such member as a result of forfeitures of retired pay ordered by a court-martial or as a result of a waiver of retired pay required by law in order to receive compensation under title 5 or title 38;

(C) in the case of a member entitled to retired pay under chapter 61 of this title, are equal to the amount of retired pay of the member under that chapter computed using the percentage of the member's disability on the date when the member was retired (or the date on

amounts intended to be deducted from total pay "are any amounts related to disability payments." In appellant's view, the Court expressly limited the language of the USFSPA when it provided that certain military retirement pay could be treated as marital property by State law, but it specifically excluded disability pay. *Mansell*, 490 U.S. at 588–89, 109 S.Ct. at 2028–29.

Appellee argues that appellant erroneously asserts that his retirement benefits, received as a result of his disability, are not subject to the terms of the judgment of divorce and that the judgment and federal law limit appellee to a share only of retirement received as a result of retirement based on longevity.

Appellee's argument is two-fold, *i.e.*, that appellant's disability retirement benefits are subject to the terms of the parties' divorce judgment or they are paid to appellant in lieu of any retirement or pension benefits and are the functional equivalent of those benefits. According to appellee, the Order is a contract, the terms of which may only be enforced by—and not rewritten by—a court. Further, because the parties did not define "pension/retirement plans," the term is ambiguous and, thus, appellant may not interpret its meaning because the test is what a reasonable person would believe it to mean.

In determining what type of pay appellant received from the military, we look to appellant's DD–214. Appellant's DD–214 states that the "Type of Separation" was "Retirement" and the reason for the separation is stated as "Disability, Temporary." Appellee's counsel was informed by letter that the entire amount of appellant's "retired/retainer pay [was] based on disability" and, thus, there were no funds payable under the USFSPA.

---

which the member's name was placed on the temporary disability retired list);  or

(D) are deducted because of an election under chapter 73 of this title to provide an annuity to a spouse or former spouse to whom payment of a portion of such member's retired pay is being made pursuant to a court order under this section.

Next, we look to correspondence in the record from the "Defense Finance and Accounting Service Retired and Annuity Pay" to appellee's counsel. In the letter dated August 17, 2006, from an "M. Dobrzanski, Retired Pay Operations," appellant is described as having been placed on "Temporary Disability" of "30%" on October 6, 2003.[4] Enclosed in the letter was a complete listing of appellant's pay account from October 6, 2003 "until his removal from Temporary Disability with Severance Pay" on December 28, 2005, when he was "authorized severance pay." The letter indicates that his severance payment was issued electronically on January 10, 2006 in the amount of $105,144.28, with taxes withheld. Thereafter, appellant was issued a payment of $35,048.49 on March 27, 2006, because he was tax exempt.

The law is well settled in Maryland that a pension constitutes marital property. *Lookingbill v. Lookingbill*, 301 Md. 283, 286, 483 A.2d 1 (1984) (citing *Deering v. Deering*, 292 Md. 115, 437 A.2d 883 (1981)). The *Lookingbill* Court noted that the major distinction between the pension at issue in that case and the *Deering* pension was that the *Deering* pension was a service plan[5] while the plan at issue in *Lookingbill* was disability related. *Lookingbill*, 301 Md. at 288–89, 483 A.2d 1. The Court of Appeals held that pension payments "are actually partial consideration for past employment whether the maturity of the pension is contingent upon age and service or upon disability." *Id.* at 289, 483 A.2d 1 (holding that a disability plan is like a service plan in that it is property within the meaning of the Marital Property Act). The Court further noted that, in Illinois and New Jersey, states with property distribution statutes similar to Maryland, disability payments are determined to be deferred compensation and are treated no differently than ordinary pension payments. *Id.* at 290 n.

---

4. 10 U.S.C. § 1201 provides that, after the Secretary determines that a member is unfit for duty, "the Secretary may retire the member, with retired pay computed under section 1401 of this title. . . ."

5. A service retirement is paid upon maturity based upon age and length of service. *See Lookingbill*, 301 Md. at 284, 483 A.2d 1.

3, 483 A.2d 1. The *Lookingbill* Court, however, determined that the circuit court erred in valuing the disability pension because the allowance that the husband was receiving was different than that which was contemplated when the service pension was valued. *Lookingbill,* 301 Md. at 291, 483 A.2d 1. In remanding the case for redetermination, the Court outlined the alternatives available for the court to use in determining the value of the disability pension and reiterated that, under an as, if and when paid computation, it was "unnecessary to determine the value of the pension fund at all." *Id.* at 292–93, 483 A.2d 1.

As stated in footnote one, *supra,* the Supreme Court held that federal statutes prevented state courts from treating military retirement pay as community property. *See Mansell,* 490 U.S. at 584, 109 S.Ct. at 2026 (citing *McCarty v. McCarty,* 453 U.S. 210, 101 S.Ct. 2728, 69 L.Ed.2d 589 (1981)). In a direct response to that holding, Congress enacted the USFS-PA, which authorized States to treat military retired or retainer pay as marital property. *See id.*

█ The USFSPA provides that "a court may treat disposable retired pay ... either as property solely of the member or as property of the member and his spouse in accordance with the law of the jurisdiction of such court." § 1408(c)(1). *See also Mansell,* 490 U.S. at 588, 109 S.Ct. at 2028. The Act specifically excludes that *retirement pay waived in order to receive veteran's disability payments.* § 1408(a)(4)(b). "Thus, under the Act's plain and precise language, state courts have been granted the authority to treat disposable retired pay as community property; they have not been granted the authority to treat total retired pay as community property." *Mansell,* 490 U.S. at 589, 109 S.Ct. at 2029; *see also Lebac v. Lebac,* 109 Md.App. 396, 409 n. 16, 675 A.2d 131 (1996) (stating that this Court is "cognizant that several federal disability retirement plans specifically disallow distribution of disability retirement benefits. *See, e.g.,* 10 U.S.C. § 1408 *et. seq.* (excluding veterans' disability retirement benefits from equitable distribution under state law)").

In the instant case, the parties agreed to reciprocal rights with respect to pension and retirement benefits. The May 26, 1995 Order provided

> that the *[appellee], shall be named as the alternate payee of the pension/retirement plans of the [appellant], and the [appellant], shall be named as the alternate payee of the pension plan of the [appellee],* in an amount to be determined pursuant to the formula delineated in *Bangs [v.] Bangs,* 59 [Md.] App. 350, 475 A.2d 1214 (1984), which provides that the non-employee spouse shall receive on an "as, if and when basis" a share in an amount which is equal to one-half times a fraction which has as the numerator the total months of marriage during which benefits were accumulated and has as the denominator the total months of employment credited towards retirement; and neither [appellee] nor [appellant] shall do or cause to be done any act which would encumber · or diminish the entitlement of the other parties' interest in said pension or retirement. . . .

(Emphasis added).

The consent judgment further ordered "that the division of the Pension and Retirement Accounts shall be provided in a separate Order and this [c]ourt shall retain jurisdiction to amend the Order for purposes of maintaining its qualification as a proper Order dividing said Pension interest. . . ." Thus, from the plain reading of the document, *both parties agreed to name the other as an alternate payee of their respective pension/retirement plans.* Not found in the agreement, however, is the requirement that the United States pay benefits to appellee pursuant to USFSPA or the requirement that appellant pay disability retirement benefits to appellee.

The circuit court's ruling on appeal does not require payment to appellee of any disability benefits, thus, the court, in essence, is not treating as property divisible, payment that has been waived to receive disability benefits. When appellant was discharged from the military, he received in entirety the benefits the United States owed to him for his service. These assets have become part of appellant's general assets. Ac-

cordingly, appellant can satisfy the judgment against him with any assets, thereby not violating *Mansell.* We, therefore, affirm the circuit court's determination of arrearages to be satisfied by appellant out of his general assets.

Our holding is guided by *Dexter v. Dexter,* 105 Md.App. 678, 661 A.2d 171 (1995). In *Dexter,* the parties entered into an agreement that was incorporated in the Judgment of Divorce. In relevant part, the Judgment of Divorce ordered "that pursuant to the agreement of the parties, forty-seven and a half percent (47.5%) of the [husband's] military retirement is awarded to the [wife] on a monthly basis 'as, if, and when' it is paid by the Department of the Army to the [husband]." *Id.* at 679, 661 A.2d 171. After the Judgment of Divorce, the husband voluntarily waived retirement benefits in order to receive VA disability benefits. Consequently, the Department of Defense ceased payment of retirement benefits to the wife because the husband had waived his right to such benefits.

The wife sought relief in the trial court, which ultimately granted her a sum of money that would have been received but for the husband's waiver, under principles of contract law. Elaborating, the judge concluded, "I do not feel that that steps on the toes of the Federal Government and their preemptive rights. I feel that this is a permissible if not indeed a required act on the part of the State to interpret and enforce agreements that are submitted to the court by consent and approved by the court." *Id.* at 684, 661 A.2d 171. On appeal, we analyzed the preemption issue and affirmed the trial court's decision holding that,

> In his written order, [the trial judge] did not order appellant to pay the wife a percentage of his disability pay received from the VA. The trial court found, in contract, and applying contract principles that, under the agreement, each party had an obligation to take reasonable steps to bring the agreement to "fruition." We agree. The trial court then rendered judgment for past sums that would have been received had appellant not unilaterally violated the terms of the agreement by waiving and rejecting the retirement

benefits after they had accrued and vested and were being received by both parties.

*Id.* at 684, 661 A.2d 171. Thus, our decision hinged on the fact that the "inability of [the wife] to receive the benefits she bargained for is caused not by any federal statute or case law, but by [the husband's] rejection, by waiver, of the retirement benefits that he had agreed were to be partially hers." *Id.*

*Dexter* and the case *sub judice* are in many ways analogous. Appellant and appellee agreed that appellee would receive a share of appellant's "pension/retirement" benefits. After both parties reached an agreement, and after the Judgment for Divorce, appellant retired on disability receiving temporary disability retirement benefits and two lump sum severance disability retirement benefits. Moreover, in both cases, the parties did not require the retirement benefits to be paid by the military, but simply required that the wife and appellee receive the stipulated share. Lastly, disability retirement benefits were received in lieu of service retirement benefits.

■ A pensioned party may not hinder the ability of the party's spouse to receive the payment that she has bargained for, by voluntarily rejecting, waiving, or terminating pension benefits when they have entered into an agreement which provides for the other party to receive a percentage of pension benefits, on a periodic basis, when they become payable, and when, they are already payable and being paid. *Id.* at 686, 661 A.2d 171. Appellant's disability classification, although not a voluntary act of waiving military retirement benefits, terminated pension benefits thereby frustrating the performance of the parties' contract. For this Court to accept appellant's argument would permit appellant to exclude appellee from receiving her share of the benefits that appellant accrued as a result of his twenty marital years of service. The Judgment of Divorce contemplated that appellee would share in all retirement benefits accrued as a result of appellant's military service evidenced by the use of the phrase "pension/retirement plans." Moreover, because appellant's disability retirement benefits are paid as pension and retirement

benefits and take the place of other pension and retirement benefits, they are subject to the division of "pension/retirement plans." To deny appellee any share of retirement benefits because appellant received severance disability retirement benefits is contrary to the intent of the parties. Accordingly, we affirm the decision of the circuit court's award of appellant's disability payments to appellee on the basis of Maryland contract law.

**JUDGMENT OF THE CIRCUIT COURT FOR HARFORD COUNTY AFFIRMED.**

**APPELLANT TO PAY COSTS.**