### In re the MARRIAGE OF Jutta G. WARKOCZ, n/k/a Jutta G. Schaeffer, Appellant,

### and

### Jeffrey F. Warkocz, Appellee.

### No. 04CA2031.

Colorado Court of Appeals, Div. I.

April 6, 2006.

As Modified on Denied of Rehearing July 20, 2006.

---

\* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2005.

Beltz, Edwards, Sabo & West, LLP, Daniel A. West, Colorado Springs, Colorado, for Appellant.

Steven M. Bush, P.C., Steven M. Bush, Denver, Colorado, for Appellee.

DAILEY, J.

In this dissolution of marriage action, Jutta G. Schaeffer (wife) appeals from the postdecree order denying her motion to enforce the provisions of the separation agreement reached with Jeffrey F. Warkocz (husband) that divided his military pension. We reverse and remand with directions.

In 1996, the parties' marriage was dissolved in Florida when husband was an active member of the military. The parties' separation agreement provided, after interlineation, in pertinent part:

The parties recognize that the Wife is entitled to a portion of the Husband's military retirement. When, and if, the Husband

retires, the retirement shall be divided by way of a formula which uses nine years of marriage for the numerator, the total number of years of service as the denominator, and thereafter, that fraction being divided by 2. For example, if the Husband retires with 20 years of service, the formula would be 9 divided by 20 equals 45%, 45% divided by 2 equals 22.5%. That would mean the Wife would receive 22.5% of the Husband's military retirement.

The parties also agreed that husband would pay wife nonmodifiable maintenance of $400 per month for twelve months. Each waived any future right to spousal maintenance after September 1996 and agreed that the court would then lose any jurisdiction over the issue. The agreement also contained a general indemnification clause, a section concerning breach, and a section providing for the award of all reasonable attorney fees and costs against the breaching party. The Florida court adopted "those portions of the agreement that [it could] enforce" and directed the parties to comply with all terms of the agreement.

Husband retired from active military service in May 2002 and moved to Colorado. It is undisputed that wife was entitled to 22.5% of husband's military retirement pay. It is also undisputed that husband received a 40% disability rating in April 2002 and waived a corresponding percentage of military retirement pay in order to receive disability pay.

In 2003, wife requested, and was granted, permission to docket the Florida decree in Colorado under § 14–11–101, C.R.S.2005.

In 2004, wife sought entry of judgment for $5000 of unpaid military retirement pay, alleging that husband had failed to make any payments to her. Wife argued that she was entitled to her percentage share of husband's total service entitlement and that he could not diminish the benefits available to her. Husband argued that, absent specific language in the agreement protecting wife's share in the event of waiver, she was only entitled to a share of his reduced military benefits.

After a hearing, the trial court found that the separation agreement did not set a specific amount that wife was entitled to receive, but contained only a formula for prospective benefits. The court (1) limited judgment to the undisputed amount of military retirement owed; (2) determined that there was no loss of property entitling wife to indemnification; and (3) relying on *In re Marriage of Pierce*, 26 Kan.App.2d 236, 982 P.2d 995 (1999), concluded that ordering husband to pay wife an amount equivalent to a percentage share of his total service entitlement would impermissibly effectuate a division of his disability benefits.

## I.

■ Initially, we address and reject husband's argument that Florida law applies because the parties were married there, they reviewed and negotiated the separation agreement in Florida, and a Florida court entered the judgment of dissolution.

The separation agreement contained no choice of law provision. It provided, however, that it was the intent of the parties that the agreement be incorporated in any final decree of dissolution, divorce, or separation filed by either party "in any state."

Husband did not respond to the docketing of the Florida decree in this state under § 14–11–101. Nor did he object to application of Colorado law at the hearing to interpret the provision dividing the military retirement.

Thus, we conclude that upon the docketing of the Florida pleadings, the parties' separation agreement became enforceable under § 14–11–101 and that Colorado law applies.

## II.

■ Wife contends that the trial court erred in failing to award her the amount she would have received from husband's military pay had he not applied for, and received, disability benefits. She argues that she is entitled to relief based on the provisions of the agreement. We agree.

### A.

■ The Uniformed Services Former Spouses' Protection Act (USFSPA) authorizes state courts to treat "disposable retired or retainer pay" as marital property. 10

U.S.C. § 1408(c)(1) (2000). Disposable retired or retainer pay does not include amounts waived to receive disability benefits. 10 U.S.C. § 1408(a)(4)(B) (2000); *Mansell v. Mansell*, 490 U.S. 581, 583, 109 S.Ct. 2023, 2025, 104 L.Ed.2d 675 (1989); *In re Marriage of Heupel*, 936 P.2d 561, 570–71 (Colo. 1997); *In re Marriage of Gallo*, 752 P.2d 47, 50 (Colo.1988). The trial court is thus precluded from dividing a veteran's disability retirement pay as marital property. *Mansell v. Mansell, supra; In re Marriage of Franz*, 831 P.2d 917, 918 (Colo.App.1992).

To avoid double dipping, a military retiree may receive disability benefits only to the extent that a corresponding amount of military retirement pay is waived. *Mansell v. Mansell, supra*, 490 U.S. at 583, 109 S.Ct. at 2026; *In re Marriage of Lodeski*, 107 P.3d 1097, 1099 (Colo.App.2004). A waiver of retirement pay for disability benefits is common because disability benefits are nontaxable. *Mansell v. Mansell, supra.*

The issue of enforcement of a provision dividing military pension benefits was recently addressed in the case of *In re Marriage of Lodeski, supra.* There, the division rejected the husband's argument that the trial court lacked authority to hold him in contempt for converting his military retirement pay to disability benefits.

In *Lodeski*, the wife had been awarded $436 per month as her portion of the husband's military retirement pay, 40% of which included veteran's disability benefits. Thereafter, the husband converted all his military retirement pay to disability benefits, and the direct payments to the wife from the military ceased. The trial court found the husband in contempt for altering the wife's payee status and entered judgment for all arrearages that had accumulated.

In upholding the contempt order on appeal, the division in *Lodeski* agreed with the husband that he had the right, under federal law, to elect to receive veteran's disability benefits and waive a corresponding amount of military retirement pay. However, the division rejected the husband's assertion that, because he had exercised that right, the court in the contempt action had no jurisdiction to enforce the valid permanent orders.

In rejecting voluntary action taken by a military service member to evade the property division provisions of the permanent orders, the division in *Lodeski* relied in part on the reasoning of the court in *Heupel*. The division in *Lodeski* observed the public policy of not allowing the military spouse to unilaterally defeat the other spouse's interest in military retirement pay. The division also aligned itself with the many states that have applied equitable theories to prevent that result. Although *Heupel* addressed treatment of benefits paid in lieu of military retirement . pay and not, as here, amounts waived to receive disability benefits, we conclude that the same policy reasons applied in *Heupel* and *Lodeski* are applicable.

■ Many jurisdictions have recognized that the USFSPA does not limit the equitable authority of a state court to grant relief to the nonemployee spouse when military retirement pay previously divided in a dissolution action is converted to disability pay. *See In re Marriage of Lodeski, supra*, 107 P.3d at 1101; *see also Clauson v. Clauson*, 831 P.2d 1257 (Alaska 1992)(courts need not ignore economic consequences of military retiree's choice to waive retirement pay to receive disability); *Danielson v. Evans*, 201 Ariz. 401, 36 P.3d 749, 755 (Ct.App.2001)(citing with approval *In re Marriage of Gaddis*, 191 Ariz. 467, 957 P.2d 1010 (Ct.App.1997), for the point that nothing in USFSPA suggests that court's final award of an interest in retirement pay must be altered when military retiree obtains postdecree civil service employment); *Surratt v. Surratt*, 85 Ark. App. 267, 148 S.W.3d 761, 767 (2004)(settlement agreement awarded wife vested property interest in her share of the military retirement benefits that husband could not unilaterally eliminate by waiving those benefits to receive disability benefits); *Janovic v. Janovic*, 814 So.2d 1096, 1097 (Fla.Dist.Ct.App.2002)(*Mansell* not violated because order does not distribute disability benefits, nor will husband be required to use such benefits to satisfy the enforcement order); *Black v. Black*, 842 A.2d 1280, 1284–85 (Me.2004)(USFSPA does not limit authority of state court to grant postjudgment relief when military retirement pay previously divided is converted to disability pay, so long

as the relief awarded does not itself attempt to divide disability pay as marital property); *Krapf v. Krapf,* 439 Mass. 97, 786 N.E.2d 318, 325 (2003)(court of equity will not sanction voluntary action by the husband that amounts to an evasion of the spirit of the bargain reached with the wife); *Johnson v. Johnson,* 37 S.W.3d 892, 897–98 (Tenn.2001)(USFSPA not violated by preventing husband from taking action to frustrate wife's receipt of her vested interest in his military retirement benefits).

Consistent with the public policy of our state and the decisions of the other jurisdictions noted above, we conclude that the trial court is not precluded from equitably enforcing the parties' agreement. We agree with the Alaska court in *Clauson* and the others in line with that decision that "neither the USFSPA nor prior Supreme Court decisions require our courts to completely ignore the economic consequences of a military retiree's decision to waive retirement pay in order to collect disability pay." *Clauson v. Clauson, supra,* 831 P.2d at 1263.

### B.

In denying wife her requested relief, the court found it significant that the agreement here did not set out a specific dollar amount that husband agreed to pay wife. We conclude otherwise.

The pertinent provision of the USFSPA allows the state court order that divides retired pay as a property division to be expressed either in dollars or as a percentage of disposable pay. 10 U.S.C. § 1408(a)(2)(C) (2000).

■ Here, the parties used a "time rule" formula to calculate their percentage shares of a pension for which a deferred distribution method was used. This type of formula requires multiplying the monthly benefit by the marital, or "overture," fraction and dividing the result in half. *In re Marriage of Hunt,* 909 P.2d 525, 531 (Colo.1995); *In re Marriage of Lockwood,* 971 P.2d 264, 266 (Colo. App.1998). The numerator in the coverture fraction is the number of years or months that the employee spouse earned toward the pension during the marriage. The denominator is the number of years or months of total service toward the pension. *In re Marriage of Hunt, supra.*

Use of the coverture fraction partly inures to the benefit of the military spouse. If that spouse opts to continue working for a period of time beyond entry of the decree of dissolution, the denominator of the coverture fraction reflects the increased period of employment. Ultimately, the other spouse's share of the pension under the coverture fraction will decrease in proportion to the length of the member's continued work. *See In re Marriage of Kelm,* 912 P.2d 545, 550 (Colo. 1996). Use of the coverture fraction also inures to the nonmilitary spouse's benefit by allowing that spouse to share in any cost of living increases or increases in rank. *See In re Marriage of Hunt, supra,* 909 P.2d at 531– 32; *see also In re Marriage of Kelm, supra* (husband's attempt to freeze the value of the pension at the time of dissolution and at the same time reap the rewards of deferred distribution is patently unfair to wife, who must wait to receive her share).

Here, the parties agreed to a division of husband's military retirement pay, if and when received, which ultimately could be satisfied from other property. *Cf. In re Marriage of Nevil,* 809 P.2d 1122, 1123 (Colo.App.1991)(rejecting husband's argument that disability pay could not be considered in determining his ability to pay maintenance). However, they did not define "military retirement" differently from its normally understood meaning.

According the phrase "military retirement" its usual, natural, and ordinary meaning, we conclude that the dissolution decree gave wife a vested interest in husband's military retirement benefit, which interest was entitled to enforcement, even though a specific amount was not set forth in the decree. *See Johnson v. Johnson, supra* (wife awarded one-half of the military retirement benefits); *see also Padot v. Padot,* 891 So.2d 1079, 1083–84 (Fla.Dist.Ct.App.2004); *In re Marriage of Pierce, supra,* 982 P.2d at 1001 (Green, J., dissenting)(court order dividing retired pay as a property division may be expressed in either dollars or as a percentage of disposable retired pay).

### C.

We also reject husband's argument that a more specific indemnification clause was necessary to reserve the court's jurisdiction to afford wife equitable relief from his unilateral reduction of his military pension.

 As the Maine court stated in *Black v. Black, supra,* 842 A.2d at 1285 n. 5, enforcement is not dependent on the separation agreement's containing a savings clause or covenant of good faith and fair dealing when, as here, a spouse's postjudgment actions render the distribution of property a nullity. *See also Janovic v. Janovic, supra,* 814 So.2d at 1100. Allowing a service member unilaterally to defeat his or her spouse's interest in military retired pay would have the undesirable consequence of divesting the nonemployee spouse of a valuable asset and would seriously undercut the primary purpose of the USFSPA. *See In re Marriage of Heupel, supra,* 936 P.2d at 569. In any event, no Colorado appellate decision has required a specific indemnity clause as a prerequisite to enforcement of an agreement dividing a pension. *See In re Marriage of Lodeski, supra,* 107 P.3d at 1100.

Accordingly, we conclude that the trial court had the authority to grant wife a judgment to enforce her right to her 22.5% share of husband's military pension as it existed prior to his waiver of benefits. *Cf. In re Marriage of Mockelmann,* 121 P.3d 335, 336 (Colo.App.2005)(dissolution actions are equitable proceedings, not actions at law); *In re Marriage of Lodeski, supra.*

### III.

Wife also contends that the trial court erred in not awarding her the costs and attorney fees she incurred. This issue should be addressed by the trial court on remand.

The order is reversed, and the case is remanded to the trial court with directions to enter judgment for wife's share of husband's military retirement prior to his waiver of

benefits and to reconsider wife's request for attorney fees and costs.

Judge MÁRQUEZ and Judge ROMÁN concur.